## DONALD GILBERT VITEK, JR. *v.* STATE OF MARYLAND

[No. 48, September Term, 1982.]

*Decided December 15, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with

whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH, J., dissent. MURPHY, C. J., filed a dissenting opinion at page 46 *infra,* in which SMITH, J., joins.

In June, 1981, Donald Gilbert Vitek, Jr., the appellant, after being tried by a jury in the Circuit Court for Prince George's County, was convicted of robbery and sentenced to ten years imprisonment with four years suspended. The Court of Special Appeals affirmed the judgment in an unreported *per curiam* opinion. The appellant petitioned for certiorari to this Court, and we granted the writ to consider an important issue of public interest.

The issue in this case is whether it was reversible error for the trial judge to allow the prosecutor to question Vitek regarding his financial status. The Court of Special Appeals held that such questioning was permissible, stating in pertinent part:

> "First, in cases involving crimes ordinarily committed to obtain money a 'defendant's need for money may be proved to establish a motive for committing' that offense. 1 *Wharton's Criminal Evidence,* § 172 (13th ed. 1972); *see also* 2 Wigmore, Evidence, § 392(2)(a) (3d ed. 1940). Second, even assuming the impropriety of the prosecutor's questions, appellant's answers fully and effectively rebutted any inference that his poverty was a motive for robbery. That being the case, any error was harmless beyond a reasonable doubt."

Because we agree with the appellant that evidence of his financial status was prejudicial and irrelevant to the facts of

this case, we shall reverse the decision of the Court of Special Appeals.

The parties have agreed to a statement of facts which, for purposes of this opinion, we shall summarize:

> The testimony adduced at trial was that on the evening of December 13, 1980, Patricia Cramer had been shopping at Iverson Mall in Hillcrest Heights. At approximately nine o'clock, she was returning to her car in a "fairly well lit" underground parking lot when she saw a man walking towards her. As she was opening her car door, the man rushed at her, grabbed her purse off her shoulder, pushed her against the automobile, and fled with her purse. Cramer and bystanders chased after the man, but were unable to catch him. On January 17, 1981, Cramer identified Vitek in a photographic array "as a strong look alike." She was subsequently shown different photographs and identified Vitek, from a more recent photograph, as "the man that did it." In addition, Cramer made an in-court identification of the appellant as the man who had taken her purse.

> The appellant testified in his own behalf and stated that he lived in Hillcrest Heights, but he denied any involvement in the Cramer incident. His testimony was that at the time in question, he had been with friends at the Friendly Inn, near Andrews Air Force Base.

During the trial, cross-examination of the appellant was, in pertinent part, as follows:

> "Q.  You cut the mustache off on what date, sir?
>
> A.  It was the day I got out of jail.
>
> Q.  Which would be what day?
>
> A.  The 12th of December.
>
> * * *
>
> Q.  Mr. Vitek, you indicated that you got out of jail on December 12, 1980, is that correct?

A. Yes, I did.

Q. And when you got out of jail, is it correct that you didn't have a job? Is that also true?

A. That is also correct.

Q. So, therefore, Mr. Vitek, you did not have any money on that date?

MR. DULEY [Defense Counsel]: Objection, Your Honor.

MR. HARVEY [Prosecutor]: Your Honor, I think it goes to the issue.

THE COURT: I think so.

MR. DULEY: Your Honor, I want to state for the record, number one, I think it's irrelevant; and number two, he is drawing a conclusion; and number three, he is leading the witness.

THE COURT: Well, I agree with you there.

MR. HARVEY: Number one, it's cross-examination.

THE COURT: It's cross-examination. He can lead, and I overrule the objection on all the grounds. Go on and answer the question.

BY MR. HARVEY:

Q. Is that correct, Mr. Vitek, you didn't have any money?

A. No large amount of money, but I might add —

Q. (Interposing.) Excuse me, Mr. Vitek.

A. You are asking the questions.

Q. Yes.

So you needed money, is that also correct?

A. No. That's not correct.

Q. You didn't have any, but you didn't need any?

A. Not at that time. No. If I would have, I could have obtained it very easily by going to Assistance Program they have at Social Services. I think most everybody is familiar

with that. They tell you about it when you get probation. There is a place right out here, Probation and Parole, and if you do need anything, I think it's $150 or $15 and food stamps, if you need it. I had a place to stay. I had people, and I had no need to go out and do anything as insane as attacking someone for a purse."

The appellant contends that it was reversible error to allow this line of questioning relating to his financial status because it was prejudicial inasmuch as "[a]bsolutely no direct link was shown between Appellant's alleged indigency and the robbery." The appellant further argues that his credibility was undermined by "the suggestion that [he] was in a class of individuals with a special affinity for crime. . . ." In addition, he asserts that any probative value of this line of questioning was undoubtedly outweighed by the prejudicial effect.

While conceding that evidence of indigency is not *always* admissible, the State argues that it was allowable here because the appellant had "opened the door" to such questioning by volunteering the fact that he had just gotten out of jail and because the prosecutor laid a proper foundation before asking the appellant if he needed money. The State contends that the trial judge did not abuse his discretion by allowing cross-examination concerning the appellant's financial need. It is the State's position that because "evidentiary facts of financial need are clearly relevant to show motive on the part of the accused to commit a crime for direct, or indirect, financial gain," evidence of the appellant's financial situation was relevant. The evidence was not merely that the appellant was impoverished; rather, the evidence showed that he was unemployed *and* had just been released from jail.[1]

---

1. While defense counsel did not object to the reference that Vitek had just gotten out of jail, we note that the trial court properly instructed the jury that the "defendant's guilt or innocence . . . [could not be determined] on the basis of other criminal convictions," and that evidence of a prior conviction of a "crime of moral turpitude . . . go[es] to the defendant's veracity. . . ."

It is well established that "[t]he allowance or disallowance of certain questions on cross-examination normally is left to the sound discretion of the trial judge," *Beasley v. State,* 271 Md. 521, 527, 318 A.2d 501, 504 (1974), "and in the absence of an abuse of discretion will not be interfered with on appeal." *Corens v. State,* 185 Md. 561, 566, 45 A.2d 340, 344 (1946). Nevertheless, we believe that the appellant has met "the burden of establishing an abuse of discretion" in this instance. *Mathias v. State,* 284 Md. 22, 28, 394 A.2d 292, 295 (1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979). We conclude that it was error to allow the prosecutor to inquire as to the financial situation of the appellant, and because we are not convinced "beyond a reasonable doubt" that this evidence in no way "contributed to the rendition of the guilty verdict," we cannot say the error was harmless. *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

We agree with the appellant that evidence of his financial status was irrelevant under the facts of this case and that its prejudicial effect far outweighed any probative value. As we observed in *Dorsey, supra:*

> "The real test of admissibility of evidence in a criminal case is 'the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue.' [O]ur predecessors stated it to be 'an elementary rule that evidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them.' Evidence which is thus not probative of the proposition at which it is directed is deemed 'irrelevant.' " 276 Md. at 643, 350 A.2d at 668-69. (Numerous citations omitted).

It is up to the jury to determine whether the appellant was guilty of robbery as charged in the indictment. We believe that the fact that the appellant was unemployed and recently had been released from jail was irrelevant to the main issue of guilt or innocence and could not be used to infer motive. Most importantly, it was prejudicial because

once the inference was brought out, the burden shifted to the appellant to show that he did not need money and, therefore, had no motive. As the Court of Appeals of Michigan observed in *People v. Andrews,* 88 Mich. App. 115, 276 N.W.2d 867, 868-69 (1979):

> "Whether defendant — or his girlfriend for that matter — was poor or unemployed is legally irrelevant to the issue of guilt or innocence. This Court refuses to 'assume that wealth exerts a greater attraction on the poor than on the rich'. To do so would 'effectively establish a two-tiered standard of justice and demolish *pro tanto* the presumption of innocence'. Our system of justice and its constitutional guarantees are simply too fragile to permit this type of unfounded character assassination. As stated in *People v. Henderson,* 80 Mich. App. 447, 454, 264 N.W.2d 22, 25-26 (1978):
>
>> 'The motive for a theft offense seldom requires explanation. The motive is so pervasive that its proving will establish little more than the defendant's typicality; such proof increases but little the likelihood that this defendant is guilty of the charged offense. If poor and rich share a common and obvious motive, then why prove poverty? ' " (Footnotes omitted).

*Accord State v. Stewart,* 162 N.J. Super. 96, 392 A.2d 234, 236 (1978) (generally improper to use a defendant's poverty to establish a criminal motive).

This is not to say that evidence of an accused's financial situation is never admissible. However, we agree with the appellant that in order for such evidence to be admissible, there must be something more than a "general suspicion" that because a person is poor, he is going to commit a crime. We hold that while normally it is not allowable to show impecuniousness of an accused, such evidence would be admissible under special circumstances. *See, e.g., Gross v. State,* 235 Md. 429, 201 A.2d 808 (1964), where the

defendant was convicted of murder in the first degree and sentenced to life imprisonment. Gross was employed as an exotic dancer in a bar and lived in the hotel where the murder occurred. The trial court allowed testimony that Gross had indicated to her employer that she was looking for "live wires," i.e., "men with money" and that she "would take them to [her] hotel and let them get a room, and then [she] would later visit them." *Id.,* at 444, 201 A.2d at 817. We held that the trial court had properly allowed the testimony, stating in pertinent part:

> "If believed by the triers of fact, it tended to show that [Gross] wanted money or articles of value, a possible motive for killing the doctor. Moreover, it tended to establish a consciousness on the part of [Gross] of a course of conduct which the State contended was actually pursued by [Gross]; namely, having the doctor register at her hotel and later visiting him at his room. Compare *Pearson v. State,* 182 Md. 1, 13, and *Westcoat v. State,* 231 Md. 361, 367." *Id.*[2]

Also admissible was the testimony of the wife of the hotel manager that Gross had " 'mentioned she had done . . . quite a few things in life . . . for money.' " *Id.,* at 444-45, 201 A.2d at 817. We stated:

> "The testimony was, we think, properly admitted. The conversation took place very shortly before the killing. It was the State's theory that the appellant had lured the doctor to her hotel for the purpose of killing him, taking whatever money he had upon his person, and obtaining his automobile. It was part of a chain of evidence which tended to establish that appellant was 'money conscious,' and that she

---

2. In *Pearson,* the defendant was found guilty of rape and sentenced to be hanged. The husband of the prosecuting witness had admitted accepting $5 from Pearson on the night of the alleged attack. This Court held that testimony as to the state of the *husband's* bank account or as to his earnings was inadmissible and "clearly irrelevant" to the issue of Pearson's guilt or innocence of the rape charge.

might resort to robbery to acquire things of value. As stated in *Pearson v. State, supra:* "The real test of admissibility is the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue should be admitted.' We think the conversation, when considered with the other evidence adduced, had a 'natural tendency' to establish robbery as the motive of the doctor's killing." *Id.,* at 445, 201 A.2d at 817.

*Cf. Williams v. United States,* 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897) (evidence of sums deposited in bank by defendant held inadmissible in extortion case); *Stewart, supra,* (evidence of defendant's unemployment and lack of funds held inadmissible in robbery case).

The instant case is distinguishable from *Gross* in that there were no special circumstances which would justify admitting evidence of the appellant's financial status. The fact that Vitek was unemployed and recently had been released from jail is not evidence of a "course of conduct" nor evidence of a "natural tendency" to establish a motive for robbery.

The State has cited numerous cases from other jurisdictions in support of its contention that evidence of the appellant's financial status is admissible to show motive for the robbery. After reviewing these cases, we conclude that they are all distinguishable on the basis that there was evidence of a "desperate" need for money other than the mere fact of unemployment. In *State v. Armstrong,* 170 Mont. 256, 552 P.2d 616 (1976), Armstrong had been convicted by a jury of deliberate homicide and robbery and sentenced to consecutive terms of 100 years and 40 years. The court admitted evidence showing that Armstrong had recently been fired from his job, had indicated to at least two of the witnesses that he was without money, had written checks without sufficient funds to cover them, and had been involved in a poker game on the evening in question. In addition, the court allowed testimony that Armstrong had

applied for welfare benefits, during the course of which he had displayed an angry demeanor, and that he had been known to carry loaded weapons in his house. The Superior Court held that such evidence "taken as a whole tends to establish the fact that defendant, just prior to the crimes, was desperate for money," and that "[s]uch circumstantial evidence may provide an inference for the motive of the crimes." *Id.,* 552 P.2d at 620. In the instant matter, the only evidence from which motive could be inferred was that Vitek was unemployed and had recently been released from jail. There was nothing to indicate a "desperate" need for money. Similarly, in *Redd v. Commonwealth of Kentucky,* 591 S.W.2d 704 (Ky. Ct. App. 1979), the court held that it was proper to allow questioning as to whether Redd was employed and if not, how he supported himself because "[i]f [he were] unemployed and desperate for money, it could indicate a motive for robbery." *Id.,* at 707. In *People v. Jackson,* 77 Mich. App. 392, 258 N.W.2d 89 (1977), Jackson testified on cross-examination "that on the evening of the robbery he had sold a watch to a bar patron in order to raise money enough to purchase drinks for himself and two companions." *Id.,* 258 N.W.2d at 92. The appellate court held that "where a theft offense is involved, the prosecutor may prove a motive by showing that the defendant ... was acutely short of money immediately before the offense occurred." *Id.,* 258 N.W.2d at 93. In *Moss v. People,* 92 Colo. 88, 18 P.2d 316 (1932), testimony that the defendant gambled was admissible to show a need for money and that he may have murdered the victim in order to rob her since he was aware that "she kept a fairly large sum of money at her house." *Id.,* 18 P.2d at 318. In *U.S. v. Tierney,* 424 F.2d 643 (9th Cir. 1970), *cert. denied,* 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970), the defendant was convicted of aiding and abetting the counterfeiting of federal reserve notes. Tierney admitted participating in the counterfeiting, but claimed he had acted under duress. There was evidence that Tierney was president of a mail order company and that the counterfeit notes were printed on the company's printing press. Under these circumstances, the appellate court

allowed Tierney to testify that he manufactured the counterfeit notes because he needed more money for his business. Lastly, in *People v. Fleming*, 54 Ill. App. 2d 457, 203 N.E.2d 716 (1964), the defendant argued that it was error to allow "the mere mention of [his] indebtedness." *Id.*, 203 N.E.2d at 719. During closing argument, the prosecutor pointed out that Fleming had posted bond of $10,000 in spite of the fact he had stated he was in debt for $1,400. The trial judge sustained the defendant's objection and instructed the jury to disregard the comment. The appellate court held that any error had been cured by the court's instruction. They disagreed that "the mere mention" of Fleming's indebtedness was error "[a]lthough it may have been improper to discuss the indebtedness in conjunction with the posting of bail . . . ." *Id.* While the appellate court did not elaborate their discussion of this issue, we note that there was substantial evidence against Fleming. One of his companions testified that Fleming had previously asked him to participate in the robbery; testimony of others showed that Fleming had obtained a gun two days prior to the robbery and this gun was identified as the one used in the robbery; and, Fleming had been employed as a bus driver, was familiar with the depot that was robbed as well as its procedures, and had a uniform which, testimony showed, he was wearing at the time of the robbery. *Id.*, 203 N.E.2d at 718.

We believe the case *sub judice* is analogous to that of *United States v. Mullings*, 364 F.2d 173 (2nd Cir. 1966), where the appellate court held that evidence showing Mullings used narcotics and had net earnings of less than $65 per week was inadmissible to prove motive. Chief Judge Lumbard stated in pertinent part:

> "Although a *lack* of money is admissible to show a possible motive for some crimes, 2 Wigmore, Evidence § 392 (3d ed. 1940), in this case the chain of inferences is too speculative. There was no evidence how often Mullings took narcotics, or what the maintenance of such a habit would cost him, or

that he was unable to obtain narcotics because of a shortage of money. In effect the evidence only shows that he *might* have lacked money and therefore might have had a motive to commit the crime — from which the judge inferred that he did so. We think this is too remote; the need for money being speculative the motivation can be no better. Whatever probative value this evidence had, it was outweighed by its prejudicial effect. It would place far too much stress on the mere fact of his addiction alone." *Id.,* at 175-76. (Emphasis in original).

Here, as in *Mullings,* the inference of motive because Vitek was unemployed and had just recently been released from jail is "too speculative" and "too remote," and the evidence was improperly admitted.

Accordingly, the judgment of the Court of Special Appeals is reversed.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court with instructions to reverse the judgment entered in the Circuit Court for Prince George's County and remand to that Court for a new trial.*
>
> *Costs to be paid by Prince George's County.*

*Murphy, C. J., dissenting:*

Although I do not fully share the majority's reasoning process, I do concur with the holding that, in the circumstances of this case, the trial judge erred by allowing questioning on Vitek's need for money. However, since I find the error to be harmless beyond a reasonable doubt, I respectfully dissent.

The authorities and our cases are virtually unanimous in

allowing evidence of motive to be admitted, *e.g., Gross v. State,* 235 Md. 429, 445, 201 A.2d 808, 817 (1964); 29 Am. Jur. 2d *Evidence* § 363 (1967); R. Perkins, *Criminal Law* Ch. 7, § 9 (2d ed. 1969), including the lack of or need for money as a motive for crimes committed for pecuniary gain. *See* Annot., 36 A.L.R.3d 839, §§ 9, 11 (1971 & Supp. 1982); 1 C. Torcia, *Wharton's Criminal Evidence* § 172 (13th ed. 1972). Even those authorities which disapprove of the practice, *see* 2 J. Wigmore, *Evidence* § 392(2)(a), (3rd ed. 1940), do so not because such evidence of motive is irrelevant, but rather because its relevance is outweighed by the prejudicial effect it may have upon impecunious defendants. As the majority makes clear, a desire for pecuniary gain is virtually universal, regardless of financial status, and a general state of impoverishment need not be shown to establish a motive for pecuniary gain crimes. However, the majority concedes that "under special circumstances," the financial condition of a defendant may be admissible, where, for instance, there is a "desperate" need for money. I agree that the mere employment or financial status of a person is of such little additional probative value, given the presumption of motive in pecuniary gain crimes, that it should not be admitted in light of the possible prejudice that would attach to those who cannot rebut the inference of financial need. When evidence of financial status is proffered, the court should determine whether the evidence will show that there is either a desperate need for money or some special circumstance which makes the defendant's financial status or desire for money of special relevance before such evidence is admitted. *See, e.g., Gross v. State,* 235 Md. 429, 201 A.2d 808 (1964). Here, the prosecutor's line of questioning utterly failed to demonstrate that there was any financial need, much less a desperate need, and there was error in not sustaining the objection.

Of course, in order to constitute reversible error, the evidence improperly admitted must work some prejudice to

48

the defendant. *See* cases cited in 36 A.L.R.3d 839 §§ 14-18. Here the defendant voluntarily disclosed to the jury that he had just been released from jail. A further question on his employment status was not objected to, nor has Vitek made the revelation of his employment status an issue. Rather, it is a question about the need for money to which Vitek objected, and to which he devotes the bulk of his argument. However, there is simply no evidence or inferences that reasonably could be drawn from the evidence in this case that Vitek needed money at the time of the crime. The only evidence adduced was that Vitek had no such need. While, in the circumstances, the inquiry itself was improper, I am unwilling to conclude that the mere asking of the question warrants reversal of the conviction. I am able to declare beyond a reasonable doubt that there was no prejudice to Vitek within the contemplation of the harmless error rule enunciated in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). I would affirm the conviction.

Judge Smith has authorized me to state that he joins me in the views expressed herein.