[No. A050648. First Dist., Div. Five. Nov. 26, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORIO C. FUNTANILLA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

## COUNSEL

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Gloria Folger DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HANING, J.—Gregorio C. Funtanilla appeals his conviction by jury trial of rape in concert (Pen. Code, § 264.1)[1] and two counts of oral copulation in concert. (§ 288a, subd. (d).) He challenges firearm use enhancements (§ 12022.3, subd. (a)) to the rape in concert conviction and to other counts of which he was convicted but does not appeal. He also asserts instructional and sentencing error and insufficiency of the evidence.

### FACTS

Fifteen-year-old cousins Rene H. and Sheri H. arrived by bus in San Francisco, where they linked up with three male acquaintances, Daryll, Emarco, and Abe. Later in the evening the girls saw appellant standing by his car, which was parked near the Greyhound bus station. He was in the the company of their three acquaintances. Following some preliminary conversation, the girls agreed to go driving with them.

Eventually they arrived at appellant's house, and the entire group was invited inside. Appellant asked Daryll to come into the larger bedroom to meet his grandmother, but when Daryll entered, the bedroom was vacant. Appellant showed Daryll a gun and said he was going to "get with" Sheri and maybe Daryll could "get with" Rene.

The two men then returned to the living room, and appellant asked Sheri to meet his grandmother. She was initially reluctant, but agreed when appellant became angry and told her if she was going to "disrespect" his house and his grandmother, she could leave. When she entered the bedroom, appellant pulled a gun, held it to her head and ordered her to undress or "something would happen" to her. He ordered her to lie on the bed, raped her and left the bedroom.

After appellant departed, Sheri dressed and sat in the bedroom crying until Abe entered the room. They talked for 10 to 15 minutes, during which she

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

asked for his help, but he said he could not assist her because "they [the men] were his friends." Thereafter, appellant returned to the bedroom dressed in his undershorts and told her to take her clothes off. On this occasion she did not see a gun. She removed her clothing because she was frightened. Appellant had intercourse with her again and then forced her twice to orally copulate him. She complied because she was frightened. Appellant left the room. Five minutes later, as Sheri was dressing, Emarco entered the bedroom, forced her back onto the bed and raped her.

Between appellant's visits to Sheri in the bedroom, he showed Emarco a small gun and told him, "[T]he girls are willing . . . in giving it up." Appellant also ordered Rene to accompany him to the kitchen, where he held a gun to her head and demanded her jewelry, but she refused. He then ordered her into the small bedroom, where he forced her to orally copulate him. Within five minutes of appellant's departure, Emarco entered and forced her to orally copulate him twice. Rene did not resist because she was afraid Emarco would strike her or tell appellant.

In searching appellant's apartment, the police found a gun in the large bedroom that matched the description of the gun he displayed to Daryll, Sheri and Rene.

## DISCUSSION

### I

■ Appellant challenges the sufficiency of the evidence to support the weapon use finding on his second rape and two acts of oral copulation of Sheri, and Emarco's rape of Sheri (the rape in concert). He does not contest his convictions of the underlying offenses, but argues there is no evidence that he used, displayed or possessed a gun during the commission of these crimes.

■ At the time of commission of these offenses, section 12022.3 provided, in part, that for each violation of section 261 (rape), section 264.1 (rape in concert) or section 288a (oral copulation), in addition to the sentence provided therefore, the defendant would receive a three-year enhancement if he used "a firearm or any other deadly weapon in the commission of such violation . . . ."[2] This statute is one of a series using identical language to impose enhancements for use of dangerous weapons or firearms in the commission of felonies. (See also §§ 12022, subd. (b); 12022.5.) As

---

[2]Effective January 1, 1990, the statute was changed to give the trial court discretion to impose a three-, four- or five-year enhancement.

these statutes have been construed, "use" means more than possession of a weapon or the bare potential for use, but does not require conduct that actually produces harm. It requires only a fear of harm or force by means or display of a firearm in aiding the commission of the felony. (See *People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024]; *People* v. *Turner* (1983) 145 Cal.App.3d 658, 684 [193 Cal.Rptr. 614].)

■ The meaning of "in the commission" varies depending on the nature of the offense. Theft crimes such as burglary, robbery and receiving stolen property have been held to remain ongoing beyond the time of the physical conduct constituting the offense until the time the felon has reached a place of temporary safety. (See *People* v. *Dobson* (1988) 205 Cal.App.3d 496, 502 [252 Cal.Rptr. 423], and citations therein.) Thus, a defendant who uses a weapon at any time on the continuum between the first step of the crime and arrival at a place of temporary safety is subject to the enhancement. However, due to the multiple punishment proscription of section 654 (multiple violations of the Penal Code based on the same act or occurrence are not subject to multiple punishment), a person who uses a firearm during several nonsex offenses that are incident to one objective and comprise an indivisible course of conduct is subject to only one firearm use enhancement. (*People* v. *Cardenas* (1982) 31 Cal.3d 897, 913 [184 Cal.Rptr. 165, 647 P.2d 569] [attempted robbery and attempted murder]; *In re Culbreth* (1976) 17 Cal.3d 330, 333 [130 Cal.Rptr. 719, 551 P.2d 23] [multiple victims of a shooting melee].)

■ Unlike theft or homicide offenses, the completion of a sex offense has been narrowly defined in order to avoid the multiple punishment proscription of section 654 and to permit imposition of multiple punishment of a defendant who commits multiple sex offenses against a single victim. (§ 667.6, subds. (c), (d).) Each criminal sexual act, even when one follows another in rapid, uninterrupted succession, is considered a discrete and segregated crime, to which the single intent and objective test of section 654 does not apply. (*People* v. *Harrison* (1989) 48 Cal.3d 321, 324-325 [256 Cal.Rptr. 401, 768 P.2d 1078]; *People* v. *Perez* (1979) 23 Cal.3d 545, 552-553 [153 Cal.Rptr. 40, 591 P.2d 63].) Likewise, a weapon use enhancement attaches to each conviction of every criminal sexual act perpetrated against the same victim. (*People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 628-629 [236 Cal.Rptr. 404]; *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 70-71 [204 Cal.Rptr. 124].) However, should a defendant use a weapon in the commission of a nonsex offense which immediately succeeds a sex offense in which there has been no weapon use, the weapon use does not also attach to the sex offense because the latter is completed and a new offense has begun. (*People* v. *Dobson, supra*, 205 Cal.App.3d at pp. 502-503

l[after sexually assaulting the victim without a weapon, defendant used a large rock in an attempted manslaughter].) ▓▓▓ Based on this construction of the duration of a sex offense, appellant argues that before a firearm enhancement may attach thereto, there must be evidence that he used a firearm while committing each criminal sexual act. He concedes his use of a gun during his first rape of Sheri, but argues there is no evidence of gun use during his subsequent offenses against Sheri when he, and then Emarco, returned to the bedroom after they both had been with Rene in the other room.

There is nothing in the record to demonstrate that when appellant re-entered the bedroom after his 15-minute absence and committed additional sex offenses against Sheri, he possessed or displayed a gun in a menacing or threatening manner, i.e., "used" a gun as that verb is construed in the enhancement statutes. Rene testified that when appellant left the large bedroom after being with Sheri the first time and then ordered her (Rene) into the kitchen, he demanded her jewelry at gunpoint, inferring he had taken the gun from the bedroom in which Sheri was confined. When appellant reentered the bedroom in which Sheri was located, he was dressed only in his undershorts, and Sheri testified she did not see a gun during his second visit. When asked why she submitted to the subsequent offenses, she answered only that she was "scared"; she was not questioned as to the cause of her fear. In the absence of direct evidence of gun use in the commission of the later offenses, the question is whether gun use during the first rape can be applied to the remaining offenses.

On appeal the People reiterate the contention they made during closing argument: Even though Sheri did not see a gun during the later sexual offenses, a gun was used therein by virtue of the fact that appellant produced a gun during the first offense to put her in fear, and fear of the gun caused her to submit to the subsequent offenses. To support their argument that gun use carries over to later offenses due to the fear engendered by its use during the first offense, they rely on *People* v. *Turner, supra,* 145 Cal.App.3d 658.

In *Turner,* the defendant forced the victim into her car at gunpoint. He placed the gun between the seats and told her she would not be harmed if she cooperated. He ordered her to drive to a secluded place and to undress. While she did so, he transferred the gun to a spot on the car floor where it was out of her way, but accessible to him. He then sexually assaulted her three times. She described the gun as " 'the most frightening thing to me because I just feared the gun more than anything.' " (*People* v. *Turner, supra,* 145 Cal.App.3d at p. 685.) The jury found the defendant used a gun during each sexual offense, per section 12022.3, subdivision (a). On appeal he

argued that the court erred in failing to instruct sua sponte on the less punitive arming enhancement, section 12022.3, subdivision (b). The appellate court concluded there was no error because there was "no possibility Turner was simply armed with a gun but did not personally use it in the commission of all the offenses of which he was convicted. [¶] The gun Turner used was an essential part of the crimes he committed. . . . ■ Where the victim is sufficiently frightened by the use of a weapon such that it becomes unnecessary to continually display the weapon during the course of later crimes against that victim within a brief span of time, a use finding under section 12022.5 is proper. [Citation.] It would indeed be paradoxical to hold otherwise and reward with reduced punishment the criminal who effectively uses a firearm. . . ." (*People* v. *Turner, supra,* 145 Cal.App.3d at pp. 684-685.) *People* v. *Blevins, supra,* 158 Cal.App.3d 64 is in accord that a defendant who uses a weapon while forcing a victim to submit to an initial sexual act does not need to actually display, brandish or threaten with it again before each successive criminal sexual act committed immediately after and in the same site as the initial act. (*Id.,* at pp. 67-71.)

■ However, *Blevins* and *Turner* are factually distinguishable from the instant case. In both of them, the defendant never absented himself from the victim's presence between commission of the several offenses, and the weapon was at all times within his reach and, inferentially, within the victim's sight. Furthermore, the victim in *Turner* testified specifically concerning her fear of the gun.

Contrary to the People's argument, nothing in this record suggests that the elements of section 12022.3 can be satisfied by "carry-over" weapon use from the initial offense. To satisfy the statute there must be actual use during the offense at issue. Here, once the initial rape of Sheri was completed, i.e., once all the elements of section 261 had occurred and appellant left the room, any attendant firearm use was also completed. In order for a weapon use enhancement to attach to the later sex offenses, the People had to present evidence that appellant again used a weapon when he reentered the bedroom and committed the subsequent offenses. In the absence of any evidence that a gun was even present, let alone used, during the subsequent offenses or the rape by Emarco, the gun use enhancements imposed therefor cannot stand.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is modified by striking the firearm use enhancements on count I (rape in concert), count V (appellant's second rape of Sheri), counts

*See footnote, *ante*, page 326.

VI and VII (appellant's acts of oral copulation against Sheri) and the prior prison term enhancement for the illegal weapon possession conviction. It is otherwise affirmed.

Low, P. J., and King, J., concurred.