[No. C015195. Third Dist. Aug. 5, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH AGUERO CASTRO, JR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, V and VI.

## COUNSEL

Janice M. Lagerlof, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTLAND, J.**—Motivated simply by a desire to "fuck with" some people, defendant Joseph Aguero Castro, Jr., and his accomplice Raul Andrade engaged in a crime spree in the early morning hours of April 15, 1991,

brutally raping and then murdering a woman with a knife, and viciously assaulting an elderly man with an ax before robbing him.

A jury convicted defendant of first degree murder of the woman (Pen. Code, § 187; count I),[1] forcible rape (§ 261, subd. (a)(2); count II), and rape in concert (§ 264.1; count III). The jury found the murder occurred during commission of oral copulation and rape (§ 190.2, subd. (a)(17)) and defendant used a knife in committing the murder and rape (§ 12022.3).[2] Defendant was convicted of attempted murder of the elderly man (§§ 187, 664; count IV), robbery (§ 211; count V), and assault with a deadly weapon (§ 245, subd. (a)(1); count VI). The jury found that the victim was a person over the age of 60 (§ 1203.09).

Defendant was sentenced to an indeterminate life term for the attempted murder, followed by a consecutive term of life without the possibility of parole for the first degree murder. A concurrent term of three years was imposed for the robbery. Sentences on the remaining counts and enhancements were stayed pursuant to section 654.

In the published portion of this opinion, we reject defendant's claim that the sentence enhancement for use of a deadly weapon "in the commission of" the rape (§ 12022.3, subd. (a)) must be stricken because he did not use a deadly weapon against the victim until after he had completed his act of forcible sexual intercourse with her. As we shall explain, for the purpose of a weapon-use enhancement, the commission of rape does not end with completion of the sex act; the offense continues as long as the assailant maintains control over the victim. In reaching this conclusion, we disagree with the holding of *People* v. *Dobson* (1988) 205 Cal.App.3d 496 [252 Cal.Rptr. 423], which was followed in *People* v. *Funtanilla* (1991) 1 Cal.App.4th 326 [1 Cal.Rptr.2d 875].

In the unpublished parts of our opinion, we find no merit in defendant's remaining contentions. Accordingly, we shall affirm the judgment.

FACTS

Since none of defendant's claims of error concern the convictions arising out of his offenses against the elderly man, we briefly state only the facts underlying defendant's convictions for rape, rape in concert and felony murder.

---

[1] Further section references are to the Penal Code unless specified otherwise.

[2] The information incorrectly characterized defendant's use of a deadly weapon during the commission of the murder as an enhancement within the meaning of section 12022.3. The trial court did not impose a term for this enhancement.

With the assistance of Andrade, defendant orally copulated and then raped Jane G. When defendant was finished, he asked for the knife Andrade carried in a sheath on his belt. Andrade handed him the knife, and defendant stabbed the victim and slashed her throat. Defendant then walked over to where Andrade was standing and, at Andrade's request, returned the knife. After he gave Andrade the knife, defendant went to Andrade's car, which was parked nearby. Approximately five minutes later, Andrade rejoined defendant, who asked, "Did you do it?" Andrade replied he had stabbed the victim in the chest, and demonstrated by making a twisting motion.

Jane G. died several hours later. The cause of death was hemorrhage and shock resulting from multiple stab wounds. She suffered three major stab wounds: one in the abdomen, one in the chest, and one in the throat. She also had some superficial cuts on her neck, but these did not contribute to her death.

Defendant's theory of defense was that Andrade had inflicted the fatal wounds after the rape was completed and after defendant had returned to the car. Defendant claimed he did not intend to kill the victim and only faked cutting her throat after Andrade threatened to kill defendant if he did not kill Jane G.

## DISCUSSION

### I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

Defendant received a sentence enhancement for using a deadly weapon, i.e., a knife, in the commission of the rape. (§ 12022.3, subd. (a).) Although the trial court stayed the rape sentence and weapon use enhancement pursuant to section 654, defendant contends this is insufficient. ▉ He argues the enhancement must be stricken because the evidence establishes he did not use the knife until after he had finished raping the victim. Defendant relies primarily on *People* v. *Dobson, supra,* 205 Cal.App.3d 496 to support this contention.

Dobson forced his victim to orally copulate him and raped her. Then he said he had to kill her because she could identify him. He used a rock and one of the victim's boots in an unsuccessful effort to beat her to death. At trial, Dobson conceded he committed the sex offenses but disputed the element of malice in the attempted murder count. He presented evidence that

---

*See footnote, *ante*, page 578.

his mental state was affected by his fatigue, overwork and drug abuse, and he claimed he lost his temper when the victim hit him. (*People* v. *Dobson*, *supra*, 205 Cal.App.3d at p. 499.) Dobson was convicted of attempted voluntary manslaughter, forcible rape and oral copulation, and was found to have used a deadly weapon in the commission of each offense and inflicted great bodily injury on the victim. In sentencing Dobson, the trial court imposed term enhancements for use of a deadly weapon and infliction of great bodily injury in the commission of the sexual offenses. (§§ 12022.3, subd. (a), 12022.8.)

On appeal, Dobson claimed the enhancements should not have been imposed because his use of a deadly weapon and infliction of great bodily injury occurred solely during his later attempt to kill the victim. (205 Cal.App.3d at pp. 499-500.) The appellate court agreed, in effect determining that, where an accused uses a weapon in the commission of a nonsex offense which immediately follows a sex crime in which there was no weapon used, the weapon use does not also attach to the sex offense because that crime has been completed and the new offense has begun. (*Id.*, at pp. 501-502; accord, *People* v. *Funtanilla*, *supra*, 1 Cal.App.4th 326, 331.) The court noted that the completion of a sex offense has been defined narrowly to avoid the proscription of section 654 against multiple punishment for violations of the Penal Code based on the same act or occurrence. (*People* v. *Dobson*, *supra*, 205 Cal.App.3d at p. 502.) This narrow definition permits a defendant to be punished for each separate sex act by construing each act as having been completed before the next act is begun rather than viewing the multiple acts as a continuous transaction. The *Dobson* court stated that the trial court "incorrectly assumed the sex offenses were continuing at the time of the attempted manslaughter, a view contrary to the established law on this issue. To increase the scope of a sex offense here in order to increase punishment in this case would have the ultimate effect of reducing punishment in other sex offender cases because it would require the application of section 654 to such continuing conduct even though that conduct might constitute different sex offenses. Such a definition is contrary to the finiteness of the *act* contemplated in *People* v. *Perez* [(1979) 23 Cal.3d 545 (153 Cal.Rptr. 40, 591 P.2d 63)] and the increased punishment deemed appropriate for the sex offender who commits multiple offenses against a single victim." (205 Cal.App.3d at pp. 502-503, italics in original.)

We are unpersuaded by the analysis in *Dobson*, which overstates the holding in *Perez* and overlooks the difference between the purpose of section 654 and the purpose of statutes providing sentence enhancements for use of a weapon during the commission of a felony. (*People* v. *King* (1993) 5 Cal.4th 59, 78 [19 Cal.Rptr.2d 233, 851 P.2d 27] [a weapon-use statute

"simply enhances the term to be imposed for an offense," whereas section 654 "exists to limit the number of terms which may be executed" for multiple offenses]; see *Squaw Valley Ski Corp.* v. *Superior Court* (1992) 2 Cal.App.4th 1499, 1511 [3 Cal.Rptr.2d 897] [it is a fundamental principle of statutory interpretation that courts must construe statutes in context, keeping in mind their nature and purpose].)

Section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of [the Penal Code] may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." ■ The purpose of this section is to ensure that a defendant's punishment is commensurate with his or her culpability. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611].) Section 654 applies not only where there is just one act, but also where there is a course of conduct which violates more than one statute but nonetheless constitutes an indivisible transaction. (5 Cal.4th at p. 1208; *People* v. *Perez, supra,* 23 Cal.3d at p. 551.) Whether a course of conduct is indivisible depends on the intent and objective of the actor. If all the offenses were incidental to one objective, the defendant may be punished for any one of the acts but not for more than one. (*Ibid.*)

■ In *Perez,* the question posed was whether section 654 precludes multiple punishment for separate sex crimes committed during the same criminal venture pursuant to the same intent and objective, i.e., to obtain sexual gratification. The California Supreme Court held that multiple, separate sex crimes are not considered to be a single course of conduct under section 654 and thus each act may be punished separately. (23 Cal.3d at pp. 553-554.) The court explained that a defendant cannot escape separate punishment by claiming all of the acts were committed pursuant to a broad objective of achieving sexual gratification. (*Id.,* at p. 552.) "Such an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. . . . [¶] A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. We therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act." (*Id.,* at pp. 552-553.)

■ In other words, section 654 does not preclude separate punishment for multiple sex offenses which, although closely connected in time and part

of the same criminal venture, are separate and distinct, and which are not committed as a means of committing any other sex offense, do not facilitate commission of another sex offense, and are not incidental to the commission of another sex offense. (*People* v. *Perez, supra,* 23 Cal.3d at pp. 553-554; *People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1446-1447 [278 Cal.Rptr. 452].)

While *Perez* held that, for the purpose of section 654, each sexual act is considered to be complete before the next sexual act begins, the opinion did not address how the temporal duration of a sex crime is to be measured for the purpose of enhanced punishment, such as the felony-murder rule or a weapon-use enhancement.

If *Perez* is construed in the manner suggested by *Dobson,* then felony murder based upon a murder occurring in the commission of rape (§ 189)[7] would be eliminated except in cases where the accused killed the victim prior to withdrawing his penis because, after that point, he no longer would be engaged in the act of rape. ■■ ■■ However, it is settled that a murder is deemed to occur in the commission of rape even after the rape is completed so long as the rape and murder are part of a continuous transaction. (*People* v. *Hernandez, supra,* 47 Cal.3d at p. 348; *People* v. *Guzman, supra,* 45 Cal.3d at pp. 949-952; *People* v. *Chavez* (1951) 37 Cal.2d 656, 669-670 [234 P.2d 632].) That the rape technically has been completed is irrelevant for purposes of the felony-murder doctrine. Rather, the question is whether, under the facts of the case, the relationship between the rape and the murder " 'is sufficiently close to justify an enhanced punishment.' " (*People* v. *Guzman, supra,* at p. 951, quoting *People* v. *Fields* (1983) 35 Cal.3d 329, 365 [197 Cal.Rptr. 803, 673 P.2d 680].) This relationship may be satisfied where the culprit had control over the victim between the rape and murder. (*People* v. *Guzman, supra,* at p. 952 [a murder committed "almost immediately following the rape," as the victim got up and began to walk away, constituted felony murder and supported a special circumstance allegation that the murder occurred during the commission of the rape; cf. *People* v. *Thompson* (1990) 50 Cal.3d 134, 171-173, 176 [266 Cal.Rptr. 309, 785 P.2d 857] [a murder committed within one or two hours after a violation of section 288 (lewd or lascivious act with a child under 14 years of age) while the victim was still under the culprit's control, either bound or locked in a trunk, constituted felony murder; "defendant's control over the victim was continuous and links the crimes"].)

---

[7]Section 189 provides in pertinent part that a murder which is committed "in the perpetration of" rape is felony murder of the first degree. The phrase "in the perpetration of" is synonymous with the phrase "in the commission of." (*People* v. *Hernandez, supra,* 47 Cal.3d 315, 348; *People* v. *Guzman* (1988) 45 Cal.3d 915, 949-950 [248 Cal.Rptr. 467, 755 P.2d 917].)

Therefore, for the purpose of felony murder, the commission of rape may be deemed to continue so long as the culprit "maintains control over the victim." (Cf. *People* v. *Thompson*, *supra*, 50 Cal.3d at pp. 171-172, 176; see *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1164-1165, fn. 7 [282 Cal.Rptr. 450, 811 P.2d 742] [a rape victim "would not agree that the crime was completed once the crime was initially committed (i.e., at the point of initial penetration)"].)

We see no reason to treat the phrase "in the commission of" rape differently for the purpose of a weapon-use enhancement. (Cf. *People* v. *Heston* (1991) 1 Cal.App.4th 471, 479-480 [2 Cal.Rptr.2d 26].) It is illogical to say that defendant murdered the victim in the present case during the commission of a rape, but that the knife—the method by which defendant murdered the victim—was not used in the commission of the rape. Instead, a broad construction of the phrase "in the commission of" advances the purpose of enhancements which provide for additional punishment when a weapon is used "in the commission of" a specified crime. (E.g., § 12022.3.) The purpose of these enhancements is to deter weapon use during the commission of crimes (*People* v. *King*, *supra*, 5 Cal.4th at p. 78)—which use increases the risk of physical injury to the victim (cf. *People* v. *Fierro* (1991) 1 Cal.4th 173, 226 [3 Cal.Rptr.2d 426, 821 P.2d 1302]). This purpose is advanced by enhancing the penalty when a rapist uses a weapon against the victim after the sex act but while the rapist maintains control over the victim. Under these circumstances, the relationship between the rape and the weapon use is sufficiently close to justify an enhanced punishment. (*People* v. *Guzman*, *supra*, 45 Cal.3d at p. 951.)

Hence, due to the different objectives of the statutes, a rape may be an independent "transaction" for the purpose of section 654 (*People* v. *Perez*, *supra*, 23 Cal.3d at pp. 551, 553-554) but, for the purpose of a weapon use enhancement, the commission of rape may continue beyond the physical completion of the act. (Cf. *People* v. *Guzman*, *supra*, 45 Cal.3d at pp. 949-952.)

Here, immediately after raping the victim, defendant used a knife to stab her, undoubtedly to prevent her from identifying him. For the reasons stated above, this evidence establishes that defendant used a deadly weapon "in the commission of" the rape within the meaning of section 12022.3.

V, VI*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*See footnote, *ante*, page 578.

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment in a manner consistent with part V of this opinion and to send a certified copy of the amended abstract to the Department of Corrections.

Sims, Acting P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 23, 1994.