Filed 1/8/24  In re J.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | C097904 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. 22JU-000131) |

In December 2022, 13-year-old J.S. was playing games on a cell phone with his 10-year-old sister, R.S., in a bed she shared with their mother, who was sleeping.  J.S. asked R.S. if he could "play" with her vagina.  When she refused, J.S. put his hand under R.S.'s leggings and underwear and touched her genitals.  R.S. protested and tried to push him away.  J.S. then inserted a finger in her vagina.  The summer before, when J.S. and

1

R.S. were staying at a motel and swimming in the motel pool, J.S. attempted to pull down R.S.'s shorts and then pressed his exposed penis against her buttocks.

The juvenile court found that J.S. committed forcible sexual penetration and lewd acts upon R.S., as well as annoying and molesting J.S.'s 16-year-old brother, M.S. The juvenile court declared J.S. a ward of the court and found the maximum allowable time of confinement to be 15 years eight months.

J.S. appeals, contending: (1) substantial evidence did not support a finding that he appreciated the wrongfulness of his conduct; (2) the juvenile court erred in denying J.S.'s motion to suppress video recordings of an interview by a police officer; (3) substantial evidence did not support the finding that he molested M.S.; and (4) the case should be remanded for the lower court to apply Penal Code section 654.[1] We will affirm.

BACKGROUND

A petition was filed under Welfare and Institutions Code section 602, subdivision (a), alleging that, in December 2022, J.S. committed forcible sexual penetration against the will of R.S. (§ 289, subd. (a)(1)(B); count 1) and a lewd act upon R.S. (§ 288, subd. (b)(1); count 2). In addition, the petition alleged that between June and August 2022, J.S. committed a lewd act upon R.S. (§ 288, subd. (b)(1); count 3). Lastly, the petition alleged that, in December 2022, J.S. annoyed and molested M.S. (§ 647.6, subd. (a)(1); count 4).

In January 2023, J.S. filed a motion to suppress video recordings of (1) an interview of J.S. that a police officer conducted on the sidewalk in front of J.S.'s residence, and (2) the statements J.S. made while the officer transported him to juvenile hall. The People filed an opposition. That same month, the juvenile court held a contested hearing on jurisdiction concurrently with a hearing on the motion to suppress.

---

[1] Undesignated statutory references are to the Penal Code.

2

At the hearing, R.S. testified. At the time of the molestations, as well as at the time of the hearing, R.S. was 10 years old. In December 2022, R.S. lived with her mother, J.S., and two older brothers in a two-bedroom residence. In one bedroom, R.S. slept in a bed with her mother and J.S. slept in another bed. R.S.'s older brothers slept in the other bedroom.

One night in December 2022, after J.S. had turned 13 years old, R.S. was in bed with her mother, who was asleep, and J.S. was in the same bed next to R.S. They were taking turns playing a game on their mother's cell phone. J.S. asked R.S., "Can I play with your vagina?" R.S. said no. J.S. then stuck his hand in her leggings under her underwear. J.S. started "playing" with R.S.'s pubic hair. R.S. tried to push him away and told him to stop. J.S. then put his finger in her vagina, which hurt. R.S. again told him to stop and pushed his hand out of her underwear. Then she shook their mother awake. R.S. told her mother that J.S. was touching her inappropriately. J.S. denied it but his mother punished him.

R.S. further testified that, before the school year started in 2022, J.S. touched her inappropriately in a swimming pool at a motel. J.S. came up behind R.S. in the pool. R.S. was wearing shorts and a T-shirt. J.S. tried to pull her shorts down. R.S. pulled her shorts back up. J.S. pressed his exposed penis against her buttocks. R.S. told him to stop and swam away. She got out of the pool and sat on a chair. R.S. later told her mother and J.S. "got in trouble."

M.S., 16 years of age, testified that in December 2022, J.S., then still 12 years old, touched M.S.'s buttocks, tried to touch M.S.'s genitals, and then ran away. This happened five or six times.

Red Bluff Police Officer Lela Rosas testified regarding her investigation of a report made by M.S. to a school employee regarding inappropriate conduct involving R.S. Officer Rosas spoke to R.S. and identified J.S. as a possible suspect.

Officer Rosas contacted J.S. in front of his residence. She recorded the encounter on her body camera. Two video recordings from the body camera were played at the hearing and admitted into evidence. The first video showed Officer Rosas approaching J.S. on a residential street. J.S. was holding a gingerbread house and Officer Rosas complimented him on it. The following exchange occurred:

"[J.S.]: What did I do?

"[Officer Rosas]: I don't know, what did you do? Tell me now.

"[J.S.]: I don't know.

"[Officer Rosas]: I don't know.

"[J.S.]: I don't know, I'm confused.

"[Officer Rosas]: You brought up the whole I'm in trouble part. Now I am just curious. [In a comical tone.] Confess."

In the ensuing footage, J.S. stated that his brother picked him up from school and told him an officer and social worker were at their residence. Officer Rosas identified herself as the police officer and introduced two social workers from child protective services standing behind her. Officer Rosas explained that J.S.'s sister said that he had behaved inappropriately with her. J.S. denied it and said he did not know what his sister was talking about. In response to the officer's questions, J.S. denied that he told his sister to "suck my dick."[2] He denied he ever asked his sister if he could put his "dick in her vagina." J.S. said that, beginning when she was eight years old, his sister started saying such things to get him in trouble.

In the video recording, Officer Rosas next brought up the incident in the pool at the motel. J.S. denied that anything happened. He specifically denied that he tried to pull R.S.'s shorts down or exposed his penis. J.S. stated his sister said this to their mother

---

[2] M.S. testified that J.S. often said "suck my dick" at their residence. J.S.'s mother also testified that he said "suck my dick" to everyone in the home, including his sister R.S.

4

because R.S. wanted to keep swimming but he was tired and wanted to get out. Officer Rosas told J.S., "[H]onestly man the only way I can help is if you tell me the truth, tell me what happened." Officer Rosas expressed disbelief that R.S. would start saying these things when she was only age eight.

At this point, one of the social workers twice asked children in the vicinity to play elsewhere or go inside to give them some privacy. A police officer, identified as Detective Baxter, parked an unmarked police car across the street and walked over. Detective Baxter was in plain clothes but wore a badge and carried a sidearm. He also complimented J.S. on the gingerbread house. Detective Baxter moved behind J.S. Officer Rosas then asked J.S. about his brother reporting that J.S. smacked "his butt" and touched his genital area. J.S. denied such touching. He said, "we smack each other's butt or cup check each other." J.S. said all three brothers do this. Officer Rosas responded that no one said that but J.S.

Officer Rosas asked, "So why did you put your hand down your sister's pants?" J.S. denied he did and said he loved his sister. Officer Rosas responded, "I understand but that is not what she is saying."

Without further colloquy, Officer Rosas stated that she was going to put J.S. in her patrol car. J.S. asked again what he had done, began to sob uncontrollably, and called for his mother. Officer Rosas said she would get his mother and handcuffed J.S.

In a second video clip, Officer Rosas is heard exchanging information over the patrol car radio. J.S. is in the back seat. The following exchange occurred between Officer Rosas and J.S.:

"[J.S.]: . . . [I]n the pool one time, Ma'am?

"[Officer Rosas]: Give me one second. I am sorry sweetheart. [Talking on the radio.] Can you show me in or out juvenile hall one ten fifteen. 01. Okay, so what were you saying?

5

"[J.S.]: In the pool it has happened but that time my sister made me but that's the only time."

The clip ends with Officer Rosas and J.S. discussing procedure at juvenile hall, with J.S. stating he had been to juvenile hall before.

On cross-examination, Officer Rosas testified that she knew that J.S. was 13 years old when she interviewed him, as indicated by her asking him in the video if he was in seventh grade. Officer Rosas confirmed that she was in uniform and carrying a firearm. Officer Rosas stated she brought two people from child protective services because she was concerned about the safety of the victim in the home. They stood behind Officer Rosas while she interviewed J.S. Detective Baxter, who arrived mid-interview, stood behind J.S. Detective Baxter could be seen in the video with his badge and firearm. Officer Rosas testified it was not unusual for officers to provide backup, but she did not call Detective Baxter and was a bit surprised to see him. Officer Rosas affirmed that she did not tell J.S. that he was free to leave, because, she explained, he had the ability to walk into his residence at any point. J.S. did not make any effort to leave. Officer Rosas agreed that despite J.S.'s denials, she kept asking questions. Officer Rosas admitted she did not advise J.S. of his *Miranda*[3] rights when she was transporting him in the police car after arresting him.

The juvenile court asked Officer Rosas if J.S.'s mother was standing close by during the interview, though she could not be seen in the video. Officer Rosas testified that, at some point during the interview, J.S.'s mother was in the residence, and, at another point, she was standing in the door, about 25 feet away. When she was outside, she could hear the conversation. Prior to speaking with J.S., Officer Rosas informed his mother that Officer Rosas wanted to interview him. J.S.'s mother did not object.

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

At the conclusion of the evidence, J.S. made an oral motion to dismiss under Welfare and Institutions Code section 701.1, contending that the prosecution had not met its burden under *In re Gladys R.* (1970) 1 Cal.3d 855 (*Gladys R.*). The juvenile court denied the motion.

After closing argument, the juvenile court ruled on jurisdiction and denied the motion to suppress. The juvenile court found that J.S. was not in custody in the first video recording, noting: (1) J.S.'s mother was close enough that she heard the interview and J.S. could have asked to confer with her; (2) although it was intimidating to have four people there, Officer Rosas's initial behavior was casual and friendly, and, when her questioning became more aggressive, J.S. could have walked away; and (3) Detective Baxter arrived without being called and his behavior was not threatening. Given the totality of the circumstances, the juvenile court determined that *Miranda* advisements were not necessary at that point.

The juvenile court found that, when J.S. was in the patrol car, his statement was spontaneous. He was not answering a question from Officer Rosas. She was simply asking him what he had said, which she had not heard because of radio traffic.

Turning to the rebuttable presumption regarding J.S.'s knowledge that his conduct was wrongful, the juvenile court noted that J.S. was "very young" and appeared immature. However, the sexualized behavior in the household—where the brothers were grabbing each other's genitals and J.S. told people to "suck his dick"—indicated that J.S. knew what he was doing. The juvenile court also observed that J.S. was not engaging in inappropriate behavior with R.S. in the open. In the pool, no adults were around and J.S.'s actions occurred under the water. In the bedroom, their mother was asleep and J.S. took advantage of the opportunity. The juvenile court found the rebuttable presumption had been overcome and sustained the allegations in the petition.

The juvenile court declared J.S. to be a ward of the court. The court found counts 1, 2, and 3 to be felonies and count 4 a misdemeanor. The juvenile court announced the

7

maximum allowable period of confinement to be 15 years eight months, comprised of consecutive sentences of: 10 years on count 1 (the midterm), two years eight months on count 2 (one-third the midterm), two years eight months on count 3 (one-third the midterm), and four months on count 4. The court ordered J.S. detained in juvenile hall pending an evaluation for appropriate treatment or a living arrangement.

DISCUSSION

I

*Substantial Evidence of J.S.'s Awareness of Wrongfulness*

J.S. contends the juvenile court erred in denying his motion to dismiss under Welfare and Institutions Code section 701.1 because the circumstances surrounding his offenses do not provide sufficient evidence that he understood his conduct was wrong. We disagree.

In *Gladys R.*, the California Supreme Court held that in order to become a ward of the court under Welfare and Institutions Code section 602, "clear proof must show that a child under the age of 14 years at the time of committing the act appreciated its wrongfulness." (*Gladys R., supra*, 1 Cal.3d at p. 862; § 26 [persons capable of committing a crime do not include "[c]hildren under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness"]; see also *In re Paul C.* (1990) 221 Cal.App.3d 43, 50 (*Paul C.*).) "California . . . rebuttably presumes all minors under age 14 incapable of committing a crime, but does not totally exclude any child from criminal responsibility." (*Gladys R.,* at pp. 863-864; *Paul C.,* at p. 50.)

The test on appeal is whether substantial evidence supports the finding of the juvenile court that the minor understood the wrongfulness of his or her acts. (*Paul C., supra*, 221 Cal.App.3d at p. 52; see also *In re Man J.* (1983) 149 Cal.App.3d 475, 482 ["the standard for review of the juvenile court's denial of a motion to dismiss is whether there is substantial evidence to support the offenses charged in the petition"].)

8

Substantial evidence is evidence that is reasonable, credible, and of solid value. (*Paul C.,* at p. 52.) We view the evidence in the light most favorable to the judgment or order and presume the existence of every fact that could be reasonably deduced from the evidence. (*Ibid.*; *In re Man J.,* at p. 482 [" 'we may not set aside the trial court's denial of the motion [to dismiss] on the ground of insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below' "].)

"In determining whether a minor would be capable of committing a crime under section 26, the juvenile court must consider the child's age, experience, and understanding." (*Paul C., supra,* 221 Cal.App.3d at p. 52, citing *Gladys R., supra,* 1 Cal.3d at p. 864.) "Although a minor's knowledge of wrongfulness may not be inferred from commission of the act itself, 'the attendant circumstances of the crime, such as its preparation, the particular method of its commission, and its concealment' may be considered." (*People v. Lewis* (2001) 26 Cal.4th 334, 378, quoting *In re Tony C.* (1978) 21 Cal.3d 888, 900; see also *In re James B.* (2003) 109 Cal.App.4th 862, 872.)

Applying these principles, we conclude substantial evidence supports the juvenile court's finding that J.S. knew the wrongfulness of his conduct.

To begin with, J.S. was 13 years old at the time he touched his sister's genitals and digitally penetrated her. The closer a child is to age 14 the more likely it is that he appreciates the wrongfulness of his acts. (*People v. Lewis, supra,* 26 Cal.4th at p. 378; *In re James B., supra,* 109 Cal.App.4th at pp. 872-873; *Paul C., supra,* 221 Cal.App.3d at p. 53 ["[the minor] was 13 years and 4 months old at the time of the offense"].)

Further, in both the incident that occurred when J.S. was age 12 and the incident when he was 13 years old, J.S. sought to conceal his acts. His mother and brothers were not around when he was with his sister in the swimming pool. J.S.'s mother was asleep when J.S. molested his sister in the bed. R.S. had to vigorously shake her mother to wake her up. (See *In re Tony C., supra,* 21 Cal.3d. at p. 901 [13-year-old minor's conduct in

9

taking rape victim to secluded location showed he was aware he had to accomplish the act in private to avoid detection and punishment]; *Paul C., supra*, 221 Cal.App.3d at p. 53 [13-year-old minor asked victim to meet him in private in the bushes to orally copulate him].)

In the incident in the bed, the juvenile court could also infer that J.S. was aware of the wrongfulness of his acts, because (1) he touched his sister's pubic hair after she declined to let him "play" with her vagina, and (2) when she pushed him away and told him to stop, he inserted a finger in her vagina. (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298-299 [trial court could infer that 11-year-old minor was aware of wrongfulness from circumstances of the offenses that "when the target of [the minor's] advances verbally declined or resisted he refused to accept her rebuffs"]; *Paul C., supra*, 221 Cal.App.3d at p. 53 [forcing sex relevant to knowledge of wrongfulness].)

Lastly, during the officer's interview, J.S. initially denied that he touched his sister inappropriately and claimed she made things up to get him in trouble. Subsequently, in the patrol car, he admitted he molested his sister in the pool but claimed she made him do it. (*Paul C., supra*, 221 Cal.App.3d at p. 53 [inference of minor's knowledge of wrongfulness supported when he initially denied oral copulation occurred, then admitted it but attempted to minimize the amount of force involved]; see also *In re James B., supra*, 109 Cal.App.4th at p. 873 ["Having initially lied and hidden the evidence, and then leading deputy to it, all indicate the minor was aware of the wrongfulness of his actions"].)

We conclude that there was sufficient evidence for the juvenile court to find that J.S. was aware of the wrongfulness of his actions.

II

*Suppression Motion*

J.S. contends that the juvenile court erred in denying the suppression motion, based on the court's finding that J.S. was not in custody and therefore his statements were

10

not obtained in violation of *Miranda v. Arizona, supra*, 384 U.S. 436 and Welfare and Institutions Code section 625.6.[4] Whether a reasonable 13 year old in these circumstances would have felt free to stop the questioning is a close issue, as discussed *post*. But we conclude that the juvenile court correctly determined J.S. was not in custody during the first video recording, and his statement in the second recording was spontaneous and therefore not subject to *Miranda*.

"*Miranda* applies only to *custodial* interrogations, and whether a person is in custody hinges on whether a reasonable person in his or her shoes would feel free to leave." (*People v. Delgado* (2018) 27 Cal.App.5th 1092, 1104.) To make this determination, we consider the totality of the circumstances. (*In re I.F.* (2018) 20 Cal.App.5th 735, 759 (*I.F.*).) We also take the juvenile's age into consideration when determining whether a reasonable person would feel free to leave under the same circumstances. (*Delgado,* at p. 1104.) On appeal of the lower court's "decision on a *Miranda* issue, we accept the trial court's determination of disputed facts if supported by substantial evidence, but we independently decide whether the challenged statements were obtained in violation of *Miranda*." (*People v. Davis* (2009) 46 Cal.4th 539, 586.)

Addressing the second video recording first, we conclude the juvenile court correctly determined that J.S.'s statement in the patrol car admitting to an incident in the

---

[4] Welfare and Institutions Code section 625.6 requires that a youth aged 17 years of age or younger consult with legal counsel prior to custodial interrogation or waiver of *Miranda* rights, and directs the court to consider the failure to comply with this requirement in adjudicating the admissibility of the youth's statements during or after interrogation. (Welf. & Inst. Code, § 625.6, subds. (a), (b).) However, in *In re Anthony L.* (2019) 43 Cal.App.5th 438 (*Anthony L.*), the appellate court held that, in light of the "Truth-in-Evidence" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f)(2)), "[Welfare and Institutions Code section] 625.6 does not authorize a court to exercise its discretion to exclude statements if those statements are admissible under federal law." (*Anthony L.,* at p. 450; see also *People v. Lessie* (2010) 47 Cal.4th 1152, 1170.)

swimming pool was spontaneous and not in response to a question from Officer Rosas or its functional equivalent. (*People v. O'Sullivan* (1990) 217 Cal.App.3d 237, 241 [spontaneous utterance admissible even in the absence of *Miranda* warnings], citing *Rhode Island v. Innis* (1980) 446 U.S. 291, 300-302.) Officer Rosas did nothing to elicit J.S.'s statement. She had ceased her questioning when she arrested him and did not renew it in the patrol car. Officer Rosas only asked him to repeat what he had already volunteered, because she did not hear him the first time over radio traffic.

Turning to Officer Rosas's interrogation in the first video recording, although the issue is a close one, we conclude that the interview was noncustodial. When Officer Rosas approached J.S., he was standing on the sidewalk in front of his residence and, at points during interview, his mother was at the door some 25 feet away where she could hear the conversation. (*Anthony L., supra*, 43 Cal.App.5th at p. 446 [interview took place in minor's home and mother was present].) Officer Rosas's initial questions were casual and friendly, and her tone was calm throughout the interview. (*Ibid.* [officer's tone was "calm and nonconfrontational"]; *I.F., supra,* 20 Cal.App.5th at p. 770 [officer's tone in the interview was "professional and appropriate"].) Although Detective Baxter was behind J.S. during the interview and Officer Rosas was in front, neither Detective Baxter nor Officer Rosas blocked J.S. from going into the residence. (*Anthony L.,* at p. 446.) The interview lasted less than 13 minutes. (*Ibid.*)

That said, circumstances indicating J.S. *was* in custody include that Officer Rosas initiated the contact, J.S. was not asked if he wanted to speak to the police, he was not told he was free to leave, and he did not act as if he felt free to leave. (*I.F., supra*, 20 Cal.App.5th at p. 759; *Anthony L., supra,* 43 Cal.App.5th at p. 446.) Officer Rosas also questioned J.S. as a suspect and attempted to induce him to admit to molestation. (*I.F.,* at p. 759; *Anthony L.,* at pp. 446-447.) Finally, J.S. was arrested at the conclusion of the interview. (*In re Matthew W.* (2021) 66 Cal.App.5th 392, 409; *Anthony L.,* at p. 447.)

12

Nonetheless, even if we were to determine that the interview was custodial, we would conclude any error in admitting the video recordings was harmless beyond a reasonable doubt. (*I.F., supra,* 20 Cal.App.5th at p. 781; *Chapman v. California* (1967) 386 U.S. 18.) "That test requires the People here 'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*People v. Elizalde* (2015) 61 Cal.4th 523, 542, quoting *Chapman*, at p. 24.) "Under this test, the appropriate inquiry is 'not whether, in a trial that occurred without the error, a guilty verdict would have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' " (*People v. Quartermain* (1997) 16 Cal.4th 600, 621; see also *I.F.,* at p. 781.)

The juvenile court's findings sustaining the truth of the allegations were unattributable to the statements J.S. made in his prearrest statements to Officer Rosas. The evidence supporting the allegations was strong. R.S. testified at trial consistently and in detail regarding the circumstances of each incident. The juvenile court in finding J.S. knew of the wrongfulness of his actions, as well as in sustaining the allegations of the petition, repeated the details of her descriptions of the incidents. The juvenile court also expressly found M.S. credible.

Conversely, the juvenile court made no reference to J.S.'s admission as to what occurred with his sister in the motel swimming pool. And notably, J.S. did not make any admissions in the first recording. He denied his siblings' reports and offered reasons why the incidents alleged either did not occur as reported or did not constitute molestation. In stating its findings, the juvenile court did not rely on J.S.'s statements in either of the video recordings, but rather the testimony of the victims themselves. To the extent the juvenile court may have erred in admitting the video recordings, any such error was harmless.

*Substantial Evidence of Violation of Section 647.6*

J.S. contends the juvenile court erred in finding that he violated section 647.6, subdivision (a)(1), because there was no evidence that his actions toward M.S. were sexually motivated, and J.S. did not invade M.S.'s privacy and security. We conclude the juvenile court's finding was supported by substantial evidence.

Section 647.6 "makes it a crime to 'annoy[]' or 'molest' any child under the age of 18. (§ 647.6, subd. (a)(1).) [¶] ' " 'Annoy and molest' " ' in the context of this provision are ' "synonymous and mean to disturb or irritate, especially by continued or repeated acts; to vex, to trouble; to irk; or to offend." ' [Citations.] 'The forbidden annoyance or molestation is not concerned with the child's state of mind, but refers to the defendant's objectionable acts that constitute the offense.' [Citation.] The defendant's conduct must be ' " 'motivated by an unnatural or abnormal sexual interest.' " ' " (*In re L.O.* (2021) 67 Cal.App.5th 227, 242; see also *People v. Lopez* (1998) 19 Cal.4th 282, 289-290.)

M.S. testified that on multiple occasions J.S. touched M.S.'s buttocks and reached for his genitals. He found this conduct "[u]ncomfortable." M.S. also testified he believed the touching was sexual in nature. As mentioned, the juvenile court found M.S.'s testimony credible. (*In re Kelly W.* (2002) 95 Cal.App.4th 468, 471 ["In reviewing the evidence, we draw all reasonable inferences to support the judgment and resolve neither credibility issues nor evidentiary conflicts"].)

J.S. does not dispute the evidence but rather its import. He contends that his behavior in grabbing his brother's buttocks and reaching for his genitals was not motivated by an abnormal sexual interest in M.S. and did not disturb M.S., because this "sexualized horseplay among the three brothers was a common occurrence around the house, and was treated as a game." "[T]o determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not

dependent on whether the child was in fact irritated or disturbed." (*People v. Lopez, supra,* 19 Cal.4th at p. 290.) A normal child under 18 would find "sexualized horseplay" that involves touching his buttocks and reaching for his genitals annoying. (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 137 [court could draw reasonable inference that touching a child's breast and buttocks while wrestling annoyed and molested the child in violation of § 646.7]; see also *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1750.)

We conclude that the juvenile court's finding that J.S. violated section 647.6 is supported by substantial evidence.

IV

*Section 654*

J.S. contends the juvenile court violated section 654 by imposing separate periods of confinement for digital penetration of a child (§ 289, subd. (a)(1)(B); count 1) and lewd acts upon a child (§ 288, subd. (b)(1); count 2). He argues both counts arose from a single incident with R.S. that should not have been charged as two separate acts, because "there was no break in the minor's actions and the entire incident occurred very quickly."[5] We disagree. These counts involved separate acts. Therefore, we find no error.

---

[5] The minor also argues that "[t]here was no indication that the court knew it was no longer required to impose the longest possible sentence." The minor evidently refers to Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441) amending section 654, which previously "required an act or omission punishable in different ways by different laws to be punished under the law that provided for the longest term of imprisonment." (*People v. Mani* (2022) 74 Cal.App.5th 343, 351.) As amended, the statute "afford[s] sentencing courts the discretion to punish the act or omission under either provision." (*Ibid.*) The minor's argument on this point is undeveloped. The minor does not cite the legislation or explain the amendment beyond the single sentence quoted above. Accordingly, we need not consider it. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties"].) Moreover, the amendment to section 654 is

15

The dispositional report recommended allocating 10 years of the sentence to count 1 consecutive to two years eight months on count 2. The juvenile court imposed the recommended period of confinement.

Defense counsel did not object. However, no objection is required to raise a section 654 issue on appeal. (*People v. Hester* (2000) 22 Cal.4th 290, 295 [" '[T]he waiver doctrine does not apply to questions involving the applicability of section 654"].) Also, the juvenile court did not expressly find that section 654 did not apply to the offenses charged in counts 1 and 2. But such a finding may occur by implication if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

Section 654 "protects against multiple punishment, not multiple conviction." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The purpose of this section is to ensure that a defendant's punishment is commensurate with his or her culpability." (*People v. Castro* (1994) 27 Cal.App.4th 578, 584.) A " 'defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act.' " (*Harrison,* at p. 336.) Thus, separate sentences may be proper "for each sex crime committed in a single encounter, even where closely connected in time." (*Ibid.*; *People v. Reeder* (1984) 152 Cal.App.3d 900, 916 (*Reeder*) [§ 654 does not preclude punishment for multiple sex offenses committed on the same occasion against the same victim].)

Our high court has "traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison, supra*, 48 Cal.3d at p. 335.) Accordingly, the question before us "is whether each sex offense is a separate and distinct sexual act rather than being merely an

---

irrelevant here. The juvenile court did not stay any sentence, and, therefore, did not exercise discretion to choose which sentence to stay.

act which facilitates the commission of another crime or is incidental to, or the means by which, some other offense was accomplished." (*Reeder, supra,* 152 Cal.App.3d at p. 917; *People v. Castro, supra*, 27 Cal.App.4th at pp. 584-585.)

Substantial evidence supported an implied finding that J.S. committed two separate and distinct sexual offenses against R.S. when he was with her in their mother's bed in December 2022. J.S. asked R.S. if he could play with her vagina and, when she declined, he proceeded to push his hand under her leggings and commit a lewd act upon her. It was not until R.S. protested and tried to push J.S. away that he performed a different act, inserting a finger in her vagina and thereby committing an act of forcible penetration. "Each act was clearly a separate and distinct act and not merely incidental to or the means by which the other offenses were committed." (*Reeder, supra*, 152 Cal.App.3d at p. 917.) J.S. may be properly punished separately for each offense. (*Ibid.*)

## DISPOSITION

The juvenile court's jurisdictional findings and dispositional order are affirmed.


_____/s/_____
BOULWARE EURIE, J.



We concur:



_____/s/_____
EARL, P. J.



_____/s/_____
ROBIE, J.

17